Florence G. Willock v. Commissioner.
Florence G. Willock v. Commissioner
Docket No. 8943.
United States Tax Court
1947 Tax Ct. Memo LEXIS 220; 6 T.C.M. (CCH) 487; T.C.M. (RIA) 47120; May 2, 1947
*220 Petitioner acquired common stock by gift and by purchase. In 1929, the corporation split its common stock; new certificates were received by petitioner for the original certificates; and the shares held increased from the original amount of 1,907 shares to 4,767 shares. In 1930, petitioner transferred the 4,767 shares to a trustee in trust. Thereafter new certificates for 4,767 shares were issued in the name of the trustee. The trust was revocable. The trustee maintained records of certificate numbers, number of shares, dates of acquisition and cost. In 1941, upon receipt of advice from petitioner that she intended selling all of the stock in the last acquired lot and desired that the trustee make such sale, the trustee went over its records and made allocations of the stock held to the original stock which petitioner had owned prior to the split-up so that it allocated each new certificate to a particular old one, which allocation was made on the basis of the certificate numbers, assigning the lowest numbered new certificates to the lowest numbered old certificates, comprising the earliest lot acquired. After such allocation, the trustee delivered for sale certificates representing *221 the stock last acquired. Held, that the method followed by petitioner and the trustee was sufficient to identify the shares sold represented by the new certificates as sales of particular lots originally acquired at a particular cost, and the action of the Commissioner in applying the first in, first out rule is disapproved. Robert E. Ford, 33 B.T.A. 1229, followed. William F. Knox, Esq., 1732 Oliver Bldg., Pittsburgh, Pa., for the petitioner. Homer F. Benson, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion Respondent determined a deficiency in income tax for the year 1941 in the amount of $1,054.62. Petitioner concedes liability for part of the deficiency determined. The only issue presented *222 relates to the basis for loss of certain stock sold on petitioner's behalf during the taxable year. The question is whether petitioner has sufficiently identified the shares of stock which were sold so as to make inapplicable the first in, first out rule which the respondent has applied in computing the amount of the loss deduction. The petitioner deducted $4,902.90 as long-term capital loss. The respondent determined that the loss amounted to only $1,420.77. Petitioner filed her return with the collector for the district of Florida. She is now a resident of Pittsburgh, Pennsylvania, where the trial of this proceeding was held. Findings of Fact Most of the facts have been stipulated. The stipulation is incorporated herein by this reference and is adopted as part of the findings of fact. On December 18, 1941, Peoples-Pittsburgh Trust Company, trustee of a revocable trust set up by petitioner, sold 678 out of 3,916 shares of Columbia Gas & Electric Corporation common stock held by the trust. These shares were acquired by petitioner at different times and had different cost bases. The reference to shares of stock hereinafter is to shares of Columbia Gas & Electric Corporation *223 common stock, and reference to the corporation means the above named corporation. On October 19, 1926, petitioner acquired by gift from her father 1,695 shares. Columbia Gas & Electric Corporation, on December 1, 1926, issued certificates to petitioner in her name aggregating 1,695 shares. Petitioner received the following certificates: Certificates numbered 7524 to
7537 for 100 shares each
1400 shares
Certificates numbered 7539-7540
for 100 shares each
200 shares
Certificate number 4003 for 95
shares
95 shares
Total
1695 shares These shares are referred to hereinafter as Lot No. 1. The basis on December 18, 1941, of the shares of stock in Lot No. 1 was $4.79 per share. In 1927 petitioner purchased 212 additional shares. These shares hereinafter referred to as Lot No. 2 had a basis on December 18, 1941, of $17.18 per share. On March 1, 1927, the corporation issued certificates to petitioner numbered as follows: Certificates numbered 12382, 12383
for 100 shares each
200 shares
Certificate number 20252 for 12
shares
12 shares
Total
212 shares
In the early part of 1929 Columbia Gas & Electric Corporation split its common stock on *224 the basis of 2 1/2 shares for one share. On April 27, 1929, all of the certificates comprising Lots No. 1 and 2 were cancelled and new certificates for a total of 4,767 shares were issued to petitioner thereby increasing the shares held in Lot No. 1 to 4,237 shares and the shares held in Lot No. 2 to 530 shares. Petitioner's right to an additional one-half share was sold. The new certificates issued by Columbia Gas & Electric Corporation to petitioner were as follows: Nos. 23009 to 23055 for 100
shares each
4700 shares
No. 8924 for
67 shares
Total
4767 shares
On January 15, 1930, petitioner set up a revocable trust with the Peoples-Pittsburgh Trust Company as trustee. Petitioner transferred to the trustee the foregoing 4,767 shares. On February 6, 1930, the certificates for the 4,767 shares were cancelled and new certificates were issued in the name of the trustee as follows: Nos. CP 28557 to 28603 for 100
shares each
4700 shares
No. CP 13442 for 67 shares
67 shares
Total
4767 shares
On March 31, 1930, pursuant to the action of Columbia Gas & Electric Corporation in declaring a common stock dividend of 25 per cent on its common stock *225 the trustee received an additional 1,191 shares of common stock thereby increasing the shares in Lot No. 1 to 5,296 shares and the shares in Lot No. 2 to 662 shares. The trustee also received a right for an additional three-fourths share which was sold in 1930. The certificates issued to the trustee for the 1,191 shares were as follows: Nos. CN 103335 to 103345 for
100 shares
each
1100 shares
No. CN 118093 for
91 shares
Total
1191 shares
On June 25, 1930, the trustee held a total of 5,958 shares. Prior to December 18, 1941, the trustee disposed of 2,158 shares represented by the following certificates: Nos. CP 28557 to 28564 for 100
shares each
800 shares
No. CP 118093 for 91 shares
91 shares
No. CP 13442 for 67 shares
67 shares
No. CN 103344 and CN 103345
for 100 shares each
200 shares
No. CN 103342 and CN 103343
for 100 shares each
200 shares
No. CP 28603 for 100 shares
100 shares
No. CN 103335 to CN 103341
for 100 shares each
700 shares
Total
2158 shares
On December 18, 1941, the date of the sale hereinafter mentioned, the shares held by the trustee in Lots No. 1 and 2 totaled 3,800 shares before the sale. At some *226 time prior to November 1941, the trustee advised petitioner to sell all of the shares of Columbia Gas & Electric Corporation common stock. Petitioner decided not to sell all of the shares and directed the trustee to sell only the highest cost stock. In the conduct of its business the trustee maintained records of the certificate numbers, cost, and date of acquisition of all of the stock since the formation of the trust in 1930. The trustee knew about the original gift stock, the purchased stock, the stock split-up in 1929, and the numbers of the original certificates. In accordance with petitioner's direction to sell only the highest cost stock an officer of the trustee obtained the certificate numbers of all the shares held in the trust from the Securities Department of the trustee, listed the certificates in numerical order, and allocated or assigned the lowest numbered certificates to Lot No. 1 and the next highest certificates to Lot No. 2. The trustee informed petitioner that it could identify the certificates representing the highest cost shares. On November 13, 1941, petitioner approved for sale 678 shares of the high cost stock. It was the intention of the petitioner to *227 sell only the high cost shares, stock in Lot No. 2, and not to sell any shares in Lot No. 1. The parties are agreed that of 678 shares, sold on December 18, 1941, only 400 shares are involved in the issue presented. They are agreed that out of 678 shares, 116 shares, represented by certificates Nos. CP 42439 and CP 1036596, were not included in Lots No. 1 and 2 of original stock but were acquired by petitioner by inheritance from her mother. The basis of 116 shares is not in issue. Petitioner concedes that out of the 678 shares, 162 shares, represented by certificate No. CP 28597 for 62 shares and No. CP 28598 for 100 shares, came from Lot No. 1, and that the basis of such stock is $4.79 per share. On December 18, 1941, the trustee sold 678 shares, including the 400 shares, which it had identified as the high cost shares for the total sum of $670.80. The 678 shares sold were represented by the following certificates: No. CP 28597 for 100 shares [only
62 of which were sold]
62 shares
No. CP 28598 to CP 28602 for
100 shares each
500 shares
No. CP 42439 for 100 shares
100 shares
No. CP 1036596 for 16 shares
16 shares
Total
678 shares
The trustee's *228 allocation of the certificate numbers, made on behalf of the petitioner, to identify the remaining 400 shares in question as included in Lot No. 2 is as follows: Total (frac-
tions of shares
have been
Date
Method of Acquisition
Certificate No.
Lot #1
Lot #2
disregarded)
10/19/26
Gift in name of
7524/37
1,400
1,400
petitioner
7539/40
200
200
4003
95
95
3/1/27
Purchased by peti-
12382/3
200
200
tioner
20252
12
12
1,695
212
1,907
4/27/29
Stock split up at
23009/50
4,200
4,200
2 1/2 for one
23051/55
500
500
8924
37
30
67
4,237
530
4,767
2/6/30
Reissued in name
CP
28557/64
800
800
of Trustee
28565/96
3,200
3,200
28597/98
200
200
28599/28602 *
400
400
28603
** 100
100
13442
37
** 30
67
4,237
530
4,767
3/31/30
Stock dividend
CN
103335/41
700
700
103342/3
200
200
103344
100
100
103345
** 100
100
118093
59
** 32
91
1,059
132
1,191
Total of all shares 3/31/30
5,296
662
5,958
*229 Opinion HARRON, Judge: The question is the basis for loss of 400 shares of Columbia Gas & Electric Corporation common stock sold by petitioner in 1941. Petitioner acquired the original shares on two separate occasions. She acquired Lot No. 1, consisting of 1,695 shares, by gift from her father in 1926. Lot No. 2, consisting of 212 shares, she purchased the next year in the exercise of subscription rights. The bases of Lot No. 1 and Lot No. 2 shares in the taxable year were $4.79 and $17.18 per share, respectively. Respondent determined that petitioner had not identified the 400 shares sold and applying the first in, first out rule assigned to each of the shares the basis of $4.79 for Lot No. 1 shares. Respondent claims that two events rendered it impossible to identify the shares as a part of Lot No. 2 as contended for by petitioner. The first is the 2 1/2 for one stock split-up in 1928. Roughly, petitioner turned in about 20 certificates for 100 shares each and received back about 48 certificates each representing 100 *230 shares. The second event which respondent claims deprived the shares of identity is the transfer of the 48 certificates by petitioner to the revocable trust in 1930, the cancellation of these shares by the corporation, and the issuance of 48 new certificates in the name of the trustee for the certificates cancelled. Respondent relies on Helvering v. Rankin, 295 U.S. 123; Skinner et al. v. Eaton, 45 Fed. (2d) 568; certiorari denied, 283 U.S. 837; Vawter v. Commissioner, 83 Fed. (2d) 11; certiorari denied, 299 U.S. 578; and section 19.22(a)-8, Regulations 103, for the general proposition that if shares of stock in a corporation are sold from lots purchased at different dates or at different prices and the identity of the lots can not be determined the stock sold shall be charged against the earliest purchases of such stock. Petitioner, on the other hand, claims that the identity of lots need not necessarily be lost when old certificates are surrendered for the purpose of a stock split-up, citing Fuller v. Commissioner, 81 Fed. (2d) 176; Robert E. Ford, 33 B.T.A. 1229; Herbert H. Franklin, 37 B.T.A. 471. *231 She argues that she intended to sell only the highest cost stock represented by certificates from Lot No. 2; that she communicated her intent to the trustee who sold the stock; and that she chose the certificates by an allocation procedure substantially identical to the one approved by us in the Ford case, supra. In short, petitioner claims that she sufficiently identified the 400 shares as a part of Lot No. 2 so as to make inapplicable the first in, first out rule, and that the basis for loss was $17.18 per share. We think that petitioner's contention is sound and that, despite a stock split-up, where a taxpayer expresses an intent to sell shares from a particular lot, communicates such intent to the person by whom the sale is to be executed, assigns the lowest numbered new certificates to the earliest lot purchased, and delivers certificates which according to her records represent shares from the particular lot, the identity of the original shares is preserved to overcome the first in, first out rule. Fuller v. Commissioner, supra; Robert E. Ford, supra; Herbert H. Franklin, supra. The facts show that in 1941 the trustee sold on petitioner's *232 behalf the 400 shares in question represented by four of the original 48 shares issued in the name of the trustee. The numbers of these certificates are known. The trustee had advised petitioner to sell all the stock. She refused, desiring to sell, for purposes of our discussion, only the stock of Lot No. 2. The numbers of the original certificates acquired by petitioner herself, first by gift and then by purchase are also known. Those in Lot No. 1, acquired by gift, were serially lower than those in Lot No. 2 acquired by purchase. Since the creation of the trust the trustee has maintained records of the certificate numbers, cost, number of shares, and date of acquisition of all of the stock. Prior to informing petitioner that the shares in Lot No. 2 could be identified, the trustee allocated the lower serial numbered certificates received in the stock split-up to Lot No. 1 and the remaining certificates to Lot No. 2. For the shares issued in the name of the trustee in 1930, one certificate was received for each one cancelled, and the trustee allocated the lower serial numbered certificates to Lot No. 1 and the rest to Lot No. 2. Through an error by the trustee, six certificates *233 for 562 shares were shown to petitioner and identified as coming out of Lot No. 2. Petitioner admits that only four certificates can be so allocated under the procedure set up for her by the trustee. Petitioner approved the sale of the shares upon the advice of the trustee that the shares came from Lot No. 2. It should be observed that no dividend stock is involved in the controversy. Cf. Skinner et al. v. Eaton, supra, and Vawter v. Commissioner, supra, cited by respondent. The 400 shares sold were represented by certificates first issued to petitioner in the stock split-up and later transferred from the name of petitioner to the name of the trustee. It was petitioner's intention, as respondent concedes, to sell only the highest cost stock represented by certificates from Lot No. 2 and not to sell any shares in Lot No. 1. She communicated her intention to the trustee who sold the stock and chose the certificates by allocating the lower serial numbered certificates received in the stock split-up to Lot No. 1 and the remaining certificates to Lot No. 2. Robert E. Ford supra; Fuller v. Commissioner, supra; and Herbert H. Franklin, supra, *234 are authority for the proposition, contrary to respondent's contention here, that the identity of lots need not necessarily be lost when old certificates are surrendered for the purpose of a stock split-up. In the Ford case it was said further that the taxpayers' "method of arbitrarily assigning the lower numbered new certificate to the earliest lot purchased was sufficient under the circumstances to preserve the identity and avoid the effect of the first in, first out rule." Respondent seeks to distinguish the Ford and Fuller cases on the ground that in those cases the allocations of the stock certificates received on the stock split-ups were made by the taxpayers on their books at the time they acquired the new certificates, while here it is claimed the allocation was not made until petitioner was about to sell the stock. This contention is without merit. The facts show that the allocation was made by the trustee for petitioner prior to the sale of any of the shares in question, and that it was made for the express purpose of identifying the highest cost shares which had their origin in Lot No. 2. Petitioner did as much as could be reasonably required to express an intent to sell *235 the shares of Lot No. 2 and to ascertain which of the certificates represented such shares. See Herbert H. Franklin, supra.All this was done prior to the sale. Hence, the only difference which respondent asserts between this and the cited cases seems to be that in the cited cases the allocation procedure was further removed in point of time from the date of sale. We not only fail to see how this affects the ability to identify the particular shares sold, but it should be noted that the facts do not support the asserted distinction, since the trustee maintained all the necessary records from the time of the creation of the trust in 1930. Respondent's contention appears to constitute an indirect attempt to overturn the settled rule that a stock split-up need not necessarily destroy the identity of the original lots. Fuller v. Commissioner, supra; Robert E. Ford, supra; Herbert H. Franklin, supra. If, as was held in the Ford case, the method of assigning the lowest numbered new certificates received in a stock split-up to the earliest lot purchased may be sufficient to preserve the identity of the original shares, the only added *236 factor which is present here is the cancellation of the new certificates and the issuance of an equal number in the name of the trustee after the creation of the trust in 1930. Here again the lower serial numbered certificates in the name of the trustee were allocated to an equal number of certificates representing Lot No. 1 and the original identities of Lot No. 1 and Lot No. 2 were not destroyed. Petitioner's contention that she has sufficiently identified the 400 shares as coming from Lot No. 2 and that her basis for loss is $17.18 per share is sustained. Decision will be entered under Rule 50. Footnotes
*. These certificates represent the 400 shares in dispute. ↩
**. The certificates for these shares allocated to Lot No. 2 were disposed of prior to 1941.↩